IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROBY A. TURNER ,                    )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )          1:16CV1202
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social        )
Security,                            )
                                     )
                                     )
                    Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Roby A. Turner, seeks review of a final decision of the Commissioner of

Social Security denying his claim for supplemental security income ("SSI"). The Court has

before it the certified administrative record[1] and cross-motions for judgment, (ECF Nos. 9,

13).

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for SSI on January 7, 2013,[2] alleging a disability onset date

of January 1, 1997, later amended to December 26, 2012. (Tr. 275–280, 297,337.) The

applications were denied initially and again upon reconsideration. (*Id.* at 176–83, 185–202.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the
Commissioner's Answer. (ECF No. 7.)

[2] On the same day, Plaintiff also filed an application for disability insurance benefits ("DIB").
(Tr. 271–74.) Plaintiff met the insured status requirements for DIB only through June 30, 2000. (*Id.*
at 380.) By amending his alleged onset date to December 26, 2012, he also impliedly withdrew his
request for a hearing on, and voluntarily dismissed, his DIB claim. (*Id.* at 21–22.)

A hearing was then held before an Administrative Law Judge ("ALJ") at which Plaintiff, his attorney, and a vocational expert ("VE") were present. (*Id.* at 46–84.) On January 12, 2016, the ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 18–39.) On August 2, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1–7.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "In reviewing for substantial evidence, [the Court] do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] Here, the ALJ first

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged

determined that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of December 26, 2012. (Tr. 23–24.) The ALJ next found that Plaintiff suffered from the following severe impairments: anxiety and status-post left rotator cuff repair. (*Id.* at 24–27.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one listed in Appendix 1. (*Id.* at 27–28.)

Prior to step four, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (*Id.* at 28–37.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. §416.967(b), with the following additional limitations:

> [Plaintiff] can frequently climb ladders, ropes and scaffolds. He can frequently stoop and crouch. He can frequently reach overhead with his left upper extremity. [Plaintiff] should avoid concentrated exposure to unprotected heights. His work is limited to simple, routine tasks. He can have occasional interaction with his co-workers.

(*Id.* at 29.) At the fourth step, the ALJ determined that Plaintiff was capable of performing past relevant work as a production helper and landscaper. (*Id.* at 37.) In the alternative, the ALJ found at step five that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 38.) These jobs included sorter of agricultural products, laundry classifier, and bakery worker. (*Id.*) Consequently, the ALJ

---

period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his or] her past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473.

determined that Plaintiff was not disabled from the amended alleged onset date through the decision date. (*Id.* at 39.)

## IV. ISSUES AND ANALYSIS

Plaintiff argues that the ALJ committed three errors that warrant remand. (ECF No. 10 at 5–19.) First, Plaintiff contends that the ALJ failed to find Plaintiff's back and knee impairments severe at step two and then failed to consider the effects of those non-severe impairments when conducting her RFC assessment. (*Id.* at 6–14.) Second, Plaintiff argues that the ALJ improperly weighed the opinion evidence. (*Id.* at 14–18.) Third, Plaintiff contends that the RFC for light work is not supported by substantial evidence. (*Id.* at 18–19.) For the following reasons, the Court disagrees.

### A. The ALJ's Step-Two Finding is Supported by Substantial Evidence

In his first argument, Plaintiff contends that the ALJ erred at step two, first by failing to find that his back and knee impairments were severe, (*id.* at 6–12), then by failing to consider the effects of these impairments in her RFC assessment, (*id.* at 12–14). Step two requires the ALJ to determine if the claimant has any severe medically determinable impairments. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* at § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." § 404.1522(a).[4]

---

[4] Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

In the present matter, at step two, the ALJ found that Plaintiff's anxiety and status-post left rotator cuff repair constituted severe impairments. (Tr. 24.) The ALJ also found that Plaintiff had "other non-severe impairments as well that [we]re medically managed, acute, resolved with treatment, or otherwise ha[d] not been shown to have more than a minimal effect on [Plaintiff's] ability to engage in work-related activities." (*Id.*) As to Plaintiff's back impairment, the ALJ found as follows:

> [Plaintiff] has a remote history of "mild" lumbar and thoracic strain in November 1998 for which he received conservative treatment. Exhibit 2F:1. In January 2014, [Plaintiff's] physician still only recommended conservative treatment for his complaints of back pain. Exhibit 15F:127. An x-ray from July 2010 showed minimal osteophytosis at L1-L-4. Exhibit 8F:87. An x-ray from September 2013 showed some degenerative changes at L3-4 and minimal changes at L4 through S1. Exhibit 11F:2. An x-ray from October 2013 showed only "mild" interval progression in degenerative changes centered at L3-4. Exhibit 15F:35, 41. Moreover, a MRI of [Plaintiff's] lumbar spine from November 2013 showed only "mild" degenerative disc disease without canal or foraminal stenosis. Exhibit 15F:44. An MRI of [Plaintiff's] lumbar spine from April 2014 showed facet joint degeneration at L3-4 bilaterally and at L5 on the right. Exhibit 12F:9, 16. Notes throughout the record state that his straight leg-raising test was negative. Exhibit 9F:5; Exhibit 15F:48, 66, 90. Based on this evidence, the undersigned finds that [Plaintiff's] back sprain and degenerative disc disease are non-severe. His remote back strain resolved with conservative treatment. [Plaintiff's] back pain due to degenerative disc disease has been episodic and medically managed, and has not been shown to have more than a minimal effect on [Plaintiff's] ability to engage in work-related activities.

(*Id.* (*referencing* Tr. 445, 1112, 630, 728, 1020, 1026, 1029, 742, 749, 710, 1033, 1051, 1075).)

The ALJ's analysis appears well-supported and error free for the reasons described, and the

evidence cited, above. Plaintiff counters that the ALJ ignored imaging evidence[5] and findings on examination[6] that, he argues, are consistent with Plaintiff's reports of pain and support opinions significantly limiting his ability to stand and walk. (ECF No. 10 at 7–10.) Plaintiff's arguments are without merit.

The ALJ specifically found that neither the above-cited imaging evidence nor the treatment notes showing only conservative treatment supported either Plaintiff's allegations about the severity of his pain, (*id.* at 30), or opinions that more significantly limited Plaintiff's ability to stand or walk, (*id.* at 33–37). *See Dunn v. Colvin*, 607 F. App'x 264, 273 (4th Cir. 2015) (unpublished) ("[T]he conservative nature of Appellant's treatment is an adequate basis to support the ALJ's conclusion that Appellant's testimony of her disabling condition was incredible."); *Somerville v. Colvin*, No. 1:12CV1360, 2015 WL 1268258, at *3 (M.D.N.C. Mar. 19, 2015) (unpublished) (concluding that the ALJ's decision to give the physician's opinion less than controlling weight was supported by substantial evidence because the physician's opinion was inconsistent with the conservative treatment given to the plaintiff which included injections, medication, "a hand splint, physical therapy, and chiropractor treatment").

---

[5] Plaintiff contends that when describing Plaintiff's November 2013 MRI, the ALJ "reported only the degenerative changes; she omitted the evidence of a small right foraminal and extraforaminal disc protrusion at L2-3, and small bi-lobed disc bulge at L3-4." (ECF No. 10 at 7 (*referencing* Tr. 1028–29).) Plaintiff also argues that the ALJ "neglected to report the result of the CT scan performed on April 4, 2014 that showed facet joint degeneration at L3-4 bilaterally and at L5-S1 on the right." (*Id.* at 7–8 (*referencing* Tr. 742).)

[6] Plaintiff argues that "the record documents just as many positive straight-leg raise tests as negative ones," (ECF No. 10 at 8 (*referencing* Tr. 727, 1024, 1328, 1376)), and also consistently reveals observations of Plaintiff's "slow, abnormal, and/or antalgic gait," (*id.* (*referencing* Tr. 708, 744, 893, 901, 909, 918, 922, 926, 930, 934, 938, 942, 1096, 1244, 1328, 1365)), restricted range of motion of the lumbar spine, (*id.* (*referencing* Tr. 710, 728, 1023, 1103, 1111, 1327, 1376)), and tenderness at the bilateral lumbar paraspinal muscles, (*id.* (*referencing* Tr. 710, 728, 737, 1033, 1051, 1071, 1111, 1327)).

Plaintiff has not challenged the ALJ's credibility analysis and, as will be discussed in greater detail below, the ALJ gave good reasons for giving little weight to such opinions. (Tr. 33–37.) Moreover, it is well-established that an ALJ need not provide a written evaluation for each document in the record. *See Brittain v. Sullivan*, 956 F.2d 1162, at *6 (4th Cir. 1992) (unpublished) ("An ALJ need not comment on all evidence submitted."); *see also Brewer v. Astrue*, No. 7:07–CV–24–FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct 21, 2008) (unpublished table decision) ("While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.").

Here, as demonstrated above, and despite Plaintiff's argument to the contrary, the ALJ did discuss the imaging evidence.[7] (Tr. 24.) As to the examination findings, although the ALJ did not specifically mention Plaintiff's "abnormal gait" or certain other specific treatment notes, the record supports her conclusion that Plaintiff's back pain was episodic and medically managed. (*Id.*) For example, Plaintiff cites some fifteen occasions on which a medical provider documented a slow, abnormal, or antalgic gait. (ECF No. 10 at 8.)[8] However, the record also shows that Plaintiff's treating physicians frequently found his gait to be "within

---

[7] Although the ALJ did not reference all the specific findings Plaintiff cites, she incorporated the overall diagnosis of multilevel "'mild' degenerative disc disease without canal or foraminal stenosis" in her analysis of Plaintiff's non-severe back impairment. (Tr. 24 (*referencing* Tr. 1029).) In addition, although referring to it as an MRI, she specifically referenced April, 2014 CT scan and the "facet joint degeneration at L3-4 and at L5 on the right" that Plaintiff contends she neglected to report. (*Id.* (*referencing* Tr. 724).)

[8] Ten of these fifteen notes were made by Jan West, Psychiatric and Mental Health Nurse Specialist.

normal limits." (*See, e.g.*, Tr. 1033, 1075, 1079, 1111, 1328.) Moreover, like straight-leg raise tests, which yielded varied results, (*see, e.g.*, Tr. 710, 1033, 1051, 1075 (negative straight-leg raise tests); Tr. 727, 1024, 1328, 1376 (positive straight-leg raise tests)), Plaintiff's physicians only sporadically, rather than consistently, found restricted range of motion, (*see, e.g.*, Tr. 1061, 1273, 1291, 1371 (finding normal range of motion)), or paraspinal tenderness. *See Ferrell v. Astrue*, No. 3:11-CV-00503, 2012 WL 4378131, at *13 (S.D. W. Va. June 22, 2012) (unpublished) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say." (alteration in original) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983))), *report and recommendation adopted*, 2012 WL 4378126 (S.D.W. Va. Sept. 25, 2012); *Bostic v. Astrue,* No. 3:10CV630-GCM-DSC, 2011 WL 3667219, at *5 (W.D.N.C. July 22, 2011) (holding same), *report and recommendation adopted*, 2011 WL 3667215 (W.D.N.C. Aug. 22, 2011), *aff'd,* 474 F. App'x 952 (4th Cir. 2012)). Further, as the ALJ noted, in spite of any findings on examination, Plaintiff's physicians recommended only conservative treatment. (Tr. 24.) The record therefore supports a finding that Plaintiff's back impairment was non-severe.

In his first argument, Plaintiff also contends that the ALJ erred in finding his left knee impairment to be non-severe. (ECF No. 10 at 10–12.) As to Plaintiffs left knee impairment, the ALJ found as follows:

> [Plaintiff] has been assessed with osteoarthritis of the left knee, according to an xray [sic] from May 2010. The x-ray showed mild medial compartment joint space narrowing. Exhibit 8F:115. [Plaintiff] testified that he hurt his knee when he was 15 years old (he is currently 52 years of age). [Plaintiff] testified has not had any surgery on his knee since the 1980's. He receives conservative treatment of injections about every [six] months. [Plaintiff] alleged in testimony that his knee "gives out on him" but was vague about how often this occurs. An x-ray of [Plaintiff's] right knee from September 2013 states that

[Plaintiff] had "mild" medial compartment joint space narrowing. Exhibit 15F:7. Additionally, an x-ray of [Plaintiff's] left knee from September 2013 states that [Plaintiff] had mild medial and lateral compartment joint space narrowing with relative preservation of the patellofemoral compartment joint space. Exhibit 15F:10. Osteophytes were present with no joint effusion. Exhibit 15F:10. The record shows that [Plaintiff] was able to perform some work despite these difficulties (self-employed as a landscaper/painter at $10.00 per hour, 40 hours per week, thru Dec. 2011 per Exh. 8E, and working as an assembler for $10.00 per hour, 40 hours per week, from July to August 2012 per Exh. 4E). In addition, treatment notes reflect that [Plaintiff] received good pain relief for six months after his injections. Exhibit 8F:84. Therefore, the undersigned finds [Plaintiff's] left knee osteoarthritis is non-severe.

(Tr. 25 (*referencing* 658, 992, 995, 321–32, 349–57, 627).) Here, too, the ALJ's analysis appears well-supported and error free for the reasons described, and the evidence cited, above.

Plaintiff again argues that the ALJ ignored imaging[9] and other objective evidence[10] that conclusively demonstrates that Plaintiff's knee impairment constitutes a severe impairment. (ECF No. 10 at 10–12.) As before, the ALJ's failure to mention every aspect of the 2013 x-ray is permissible because the record makes clear that the ALJ considered that evidence in making her determination that Plaintiff's left knee osteoarthritis was non-severe. (Tr. 25.) The ALJ concluded, and the record supports a finding, that despite imaging

---

[9] Specifically, Plaintiff argues that the ALJ improperly "omitted the additional findings of osteophytes along the superior and inferior patellar pole, subchondral cysts deep into the lateral tibial, tricompartmental degenerative changes, and the reported 'complete loss of lateral joint space noted on the tunnel views.'" (ECF No. 10 at 10–11 (*referencing* Tr. 994–998).)

[10] Plaintiff further argues that exam findings, which show tenderness, (*id.* at 12 (*referencing* Tr. 994, 1108, 1145, 1297, 1376)), restricted range of motion, (*id.* (*referencing* Tr. 893, 994, 1103)), mildly limited flexion, (*id.* (*referencing* Tr. 893)), and abnormal gait (discussed above) demonstrate that his left knee impairment substantially impairs his ability to stand and walk.

evidence,[11] Plaintiff's left knee pain was well controlled by bi-annual steroid injections. (*Id.* (*referencing* Tr. 627); *see, e.g.*, Tr. 653-54, 993, 1106, 1143-44, 1294). *See also Gross v. Heckler,* 785 F.2d 1163, 1165–66 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling." (citing *Purdham v. Celebrezze,* 349 F.2d 828, 830 (4th Cir. 1965))); 20 C.F.R. § 404.1530. For example, many of the findings to which Plaintiff refers were recorded on the same day that Plaintiff received a steroid injection, (*see, e.g.*, Tr. 993–94, 1108, 1143-45, 1294-97) or shortly before, (*see, e.g.,* Tr. 1376, 1382), showing only that Plaintiff had pain in the absence of treatment. The ALJ therefore supported her conclusion that Plaintiff's left knee impairment was non-severe with substantial evidence that Plaintiff's symptoms were well controlled by medication.

Plaintiff further argues that the ALJ erred in relying on Plaintiff's "ability to perform some work despite" knee pain. (ECF No. 10 at 11 (*referencing* Tr. 25).) Plaintiff contends that neither his July to August, 2012 work as an assembler nor his work as a self-employed landscaper/painter constituted substantial evidence for the ALJ's conclusion that Plaintiff's knee impairment was non-severe. (*Id.* at 11–12 (*referencing* Tr. 25, 52–53, 334–35, 342, 349–57 707).)

First, Plaintiff contends the ALJ erred in relying on his work as an assembler because he testified that he abandoned the job due to pain. (*Id.* (*referencing* Tr. 25, 334, 342, 707).) However, as noted above, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms only partially credible. (Tr. 30.) In

---

[11] The ALJ noted the presence of osteophytes without joint effusion. (Tr. 25 (*referencing* Tr. 995).)

particular, the ALJ found that Plaintiff's ability to perform this work at SGA levels and without special conditions "weighs against the severity of [Plaintiff's] allegations about his physical pain." (*Id.*) As also noted above, Plaintiff has not objected to the ALJ's credibility determination. Thus, the ALJ may have found Plaintiff's testimony that he abandoned the job due to pain not fully credible.

Second, Plaintiff argues that the ALJ improperly relied on Plaintiff's work as a self-employed landscaper/painter. (ECF No. 10 at 11 (*referencing* Tr. 25, 349–57).) At the hearing, contradicting a Work History Report that indicated Plaintiff had worked full-time as a self-employed landscaper/painter through 2011, Plaintiff testified that he hadn't performed such work full time since the 1980's. (Tr. 53.) The ALJ's hypotheticals to the VE make clear that she incorporated Plaintiff's testimony about the nature of his landscaping work in finding that it was "light work" as Plaintiff performed it. (*Id.* at 78.) It is not clear whether she considered or found credible Plaintiff's testimony that he did not perform such work full time.[12]

Even if the ALJ erred in relying on Plaintiff's previous work, the ALJ otherwise supported her conclusion that Plaintiff's knee impairment was non-severe with substantial evidence. In particular, the ALJ noted evidence that Plaintiff's symptoms were well controlled by bi-annual steroid injections and therefore non-severe. (*Id.* at 25 (*referencing* Tr. 627).) In any event, as will be discussed below, the ALJ properly considered Plaintiff's left knee pain when formulating the RFC. "As long as the ALJ determines that the claimant has

---

[12] The ALJ noted that Plaintiff never reported earnings for that work, but nevertheless concluded it constituted substantial gainful activity as documented in the Work History Report. (Tr. 25 (*referencing* Tr. 349–57).)

at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." *McClain v. Colvin*, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014). The Court thus finds that the ALJ's step-two determinations were proper, or at least that no error in her analysis warrants remand.

Plaintiff's first argument concludes by stating that that the ALJ failed to consider the effects of Plaintiff's back and knee impairments in her RFC assessment or to conduct a function-by-function analysis. (ECF No. 10 at 12-14.) These arguments are unavailing. If an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 416.920(e); 416.945(a)(2). Here, even though the ALJ concluded that Plaintiff's back and left knee impairments did not constitute severe impairments at step two, the ALJ's decision demonstrates that she considered both the objective and opinion evidence related to Plaintiff's back and left knee in her RFC analysis. First, in formulating the RFC, the ALJ considered Plaintiff's statements concerning the persistence, intensity, and limiting effects of his back and left knee impairments. (Tr. 30.) For example, the ALJ acknowledged that at the hearing, Plaintiff testified that "he is very slow when bending, stooping, and putting his shoes on his feet." (*Id.*) However, with respect to the credibility of Plaintiff's statements concerning his back pain, the ALJ ultimately concluded:

> Although [Plaintiff] had a minor back strain in November of
> 1998 after a slip and fall, most of the medical evidence is from
> 2011 forward, which shows some limitations on [Plaintiff's] left
> upper extremity . . . . As discussed earlier in this decision, there
> are minimal showings on diagnostic imaging to support
> [Plaintiff's] allegations about the severity of his back pain. *See
> e.g.* Exhibit 15F:35, 41. In addition, treatment notes contradict
> some of [Plaintiff's] testimony. For example, despite [Plaintiff's]
> insistence during the hearing that he does not do much with his
> son during the day, treatment notes from February 2015 state that
> [Plaintiff] had some mild shortness of breath while playing with
> his son, which shows that they do engage in exertional activities
> together. Exhibit 19F:22. Moreover, the record shows that
> [Plaintiff] was able to perform work activity at SGA levels for six
> weeks in 2012 doing assembly production for 40 hours per week.
> [Plaintiff] did not allege that he performed this job under any
> special conditions. This work activity weighs against the severity
> of [Plaintiff's] allegations about his physical pain. As stated
> above, the imaging reports of [Plaintiff's] lumbar spine do not
> support the degree of low back pain that is alleged. For example,
> an x-ray of [Plaintiff's] lumbar spine from September 2013
> showed some degenerative changes at L3-4 but "minimal"
> changes at L4-5 and L5-S1. Exhibit 11F:2. In addition,
> although [Plaintiff] had a minor back strain in November of 1998
> before his amended alleged onset date, there was no evidence of
> disc herniation or degenerative changes to support his allegations
> about the severity of his pain. Exhibit 2F:1.

(*Id.* (*referencing* Tr. 1020, 1026, 1282, 728, 445).)

The ALJ also noted that Plaintiff testified that, of his impairments, "the ones that affect

his ability to work the most are his heart and knee impairments." (*Id.* at 29.) The ALJ

continued,

> As for [Plaintiff's] left knee, he testified that he hurt it when he
> was fifteen and that he is receiving injections for his pain because
> his doctors are not able to replace it. In addition, [Plaintiff]
> testified that he receives injections in his knee . . . every six
> months. [Plaintiff] testified that he has had several falls due to his
> knee giving out on him and that it is difficult to walk.

(*Id.* at 29–30.) However, as the ALJ discussed in her step-two analysis, the ALJ concluded

that Plaintiff's treatment records and his ability to work in 2012 showed that Plaintiff's knee pain was well controlled by medication. (*Id.* at 25.)

Second, in formulating the RFC, the ALJ properly[13] considered and weighed the opinion evidence of Plaintiff's ability to stand and walk, which he alleged was limited by both knee and back pain. (*Id.* at 32-37.) Despite Plaintiff's argument to the contrary, the ALJ found that opinions that Plaintiff was significantly limited in his ability to stand or walk based on back or left knee pain were inconsistent with other objective evidence. (*Id.*) The ALJ thus ultimately concluded that extreme limitations based on back and left knee pain were not supported by the record. (*Id.*) The language of the decision thus makes clear that the ALJ did consider Plaintiff's back and knee impairments when formulating the RFC, and found the objective and opinion evidence did not support greater limitations.

Plaintiff argues that the ALJ nevertheless erred by failing to make an explicit finding regarding Plaintiff's ability to stand and walk, conduct a function-by-function analysis, or otherwise provide a "roadmap that shows the path between the evidence and her conclusion." (ECF No. 10 at 13–14 (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); *SSR 96-8p, 1996 WL 374184*).) In *Mascio v. Colvin*, the United States Court of Appeals for the Fourth Circuit addressed whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. 780 F.3d at 635–36. The Court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested." *Id.* at 636 (quotation marks omitted). However, "remand may be

---

[13] The propriety of the ALJ's treatment of opinion evidence will be discussed in the next section.

appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). In addition, "[a]n ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants." *Herren v. Colvin*, No. 1:15-CV-00002-MOC, 2015 WL 5725903, at *5 (W.D.N.C. Sept. 30, 2015) (unpublished).

Here, the ALJ's narrative permits meaningful review because she made an implicit finding of Plaintiff's capacity to stand and walk and explained how she reached that conclusion. First, by finding Plaintiff had the RFC to perform light work, (Tr. 29), "the ALJ implicitly found that [ ]he was capable of standing or walking for approximately six hours in an eight-hour work day," *Harrison v. Colvin*, No. 1:10-CV-18, 2013 WL 1661096, at *2 (M.D.N.C. Apr. 17, 2013) (unpublished) (citing *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). *See* 20 C.F.R. § 416.967(b); *SSR* 83-10, 1983 WL 31251 at *6.

Second, although the ALJ did not conduct a function-by-function analysis, it is apparent how the ALJ determined Plaintiff's capacity to stand and walk. The ALJ gave significant weight to the opinions of state agency consultant, Robert Gardner, M.D., and described the limitations found in his assessment. (Tr. 34–35.) As mentioned above, a proper function-by-function analysis conducted by a state agency consultant can satisfy an ALJ's requirement to conduct a function-by-function assessment. *Herren*, 2015 WL 5725903, at *5. In pertinent part, Dr. Gardner found that Plaintiff could stand and/or walk about six hours in an eight-hour workday without any additional postural requirements. (Tr. 114.) In

other words, Dr. Gardner found that Plaintiff was able to perform the full range of light work. (*Id.* at 34 (*referencing* Tr. 114).) This function-by-function assessment, that the ALJ gave great weight, provides support for the ALJ's RFC determination and allows the Court to conduct a meaningful review of the ALJ's analysis. *Cowles v. Colvin*, No. 1:15CV105, 2016 WL 527063, at *5–*6 (M.D.N.C. Feb. 9, 2016) (unpublished) (reasoning that although the ALJ did not conduct a complete function-by-function analysis, the ALJ gave great weight to the opinions of the state agency consultant, and explained that he did so because he found the opinions consistent with the other evidence in the record thereby removing the need to rehash a discussion of the state agency consultant's opinion), *report and recommendation adopted*, slip op. (M.D.N.C. Mar. 2, 2016); *see also Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) (unpublished) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with *SSR* 96-8p."). The RFC almost mirrors the findings of the state agency consultant. (Tr. 29, 34–35, 114.) Further, in light of evidence that was not seen by Dr. Gardner, the ALJ added additional restrictions by limiting Plaintiff to only frequent reaching overhead and only frequent stooping and crouching, and explained her reasons for doing so. (Tr. 35); *see Shore v. Colvin*, No. 1:10CV238, 2013 WL 1320504, at *2 (M.D.N.C. Mar. 29, 2013) (unpublished) (upholding the ALJ's decision notwithstanding the fact that the ALJ did not conduct a function-by-function analysis because the ALJ largely adopted and described the state agency physicians' RFCs and placed even greater limitations on the plaintiff in the RFC). Thus, the ALJ's failure to conduct a function-by-function analysis does not require remand.

In sum, the ALJ considered Plaintiff's testimony, the objective evidence, and the opinion evidence relating to his back and left knee impairments, and included the limitations she found consistent with that evidence in the RFC. The ALJ's reasons for omitting any restriction to Plaintiff's capacity to stand or walk beyond the limitation to light work are well articulated and clear. Moreover, the objective and opinion evidence of record supports her conclusions. Although Plaintiff argues that the evidence directs a different conclusion, this court is "not at liberty to 'reweigh conflicting evidence ... or substitute [its] judgment for that of the [ALJ].'" *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012) (first and third alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). The undersigned thus finds that the ALJ did not fail to consider the effects of Plaintiff's non-severe impairments in formulating the RFC.

### B.     The ALJ Properly Weighed the Opinion Evidence.

Plaintiff contends in his second argument that the ALJ improperly weighed the opinion evidence related to Plaintiff's ability to stand, walk, and lift. (ECF No. 10 at 14–18.) Specifically, Plaintiff argues that the ALJ improperly rejected the opinions of treating physician, Pippa Evans, M.D., and functional capacity examiner, Peggy Anglin, P.T., and improperly relied on the opinions of treating physician, Dr. Thomas Dimmig, consultative examiner, Dr. Jankiram Setty, and non-examining state agency consultant, Dr. Robert Gardner. (*Id.*)

Plaintiff's argument requires the Court to consider whether the ALJ evaluated the medical opinions in accordance with the treating physician rule. 20 C.F.R. § 416.927(c). The treating source rule requires an ALJ to give controlling weight to the opinion of a treating

source regarding the nature and severity of a claimant's impairment. *Id.* The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. *Id.* The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. § 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 416.927(c)(2)–(4).[14] "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. When declining to accord a treating source controlling weight, an ALJ must articulate "good reasons" for doing so. 20 C.F.R. § 416.927(c).

Here, the ALJ considered and gave little weight to Dr. Evans's and Therapist Anglin's opinions regarding Plaintiff's ability to stand, walk, and lift. (Tr. 36, 37.) In pertinent part, Dr. Evans opined that Plaintiff could "occasionally and frequently carry less than ten pounds. . . . [and] stand or walk for less than two hours in an eight-hour workday . . . ." (*Id.* at 36 (*referencing* Tr. 894–97).) The ALJ concluded that Dr. Evans's opinions "overestimate [Plaintiff's] limitations based on one exam[15] and are not consistent with the record as a whole.

---

[14] SSR 96-2p provides that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling 96-2p, *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, 1996 WL 374188, at *1 (July 2, 1996).

[15] Plaintiff contends Dr. Evans saw Plaintiff three times prior to offering her opinion. She did—once on December 2, 2013 for a routine physical, once on February 20, 2014 when Plaintiff slipped and fell and alleged hand pain and headache, and once on April 22, 2014 for concerns about anemia. Although left knee osteoarthritis is on the "problems list," back pain is not. The only reference in any of these records to back or knee pain is in the progress note from April, where

(*Id.*)  Contrary to Plaintiff's argument, the ALJ provided sufficient reasons for giving little weight to Dr. Evans's opinion of Plaintiff's capacity to lift, stand, and walk.  As Plaintiff acknowledged, the ALJ indicated that she found Dr. Evans's opinion inconsistent with the record as a whole.  *See Craig*, 76 F.3d at 590.  Although the ALJ's *examples* of inconsistencies between the record and Dr. Evans's opinion pertained to postural limitations, (Tr. 36), the inconsistencies between significant limitations in walking and standing and the record as a whole are referenced numerous times elsewhere in the ALJ's decision.  For example, the ALJ gave little weight to consultative examiner Dr. Peter Morris's opinion[16] that Plaintiff could stand for a total of four hours and walk a total of two hours in an eight-hour workday.  (*Id.* at 36 (*referencing* Tr. 710).)  The ALJ explained that Dr. Morris's opinion was inconsistent with the objective findings on examination that Plaintiff "had nearly normal motor strength in his left . . . leg with normal motor strength on the right side, a normal sensory examination, and no assistive device."  (*Id.* (*referencing* Tr. 710–11).)  The ALJ also gave little weight to Dr. Dimmig's opinion that Plaintiff's capacity to stand and walk was similarly limited because it was "not well supported with either the treatment records in evidence or the minimal findings on [Plaintiff's] lumber spine imaging reports."  (*Id.* at 34 (*referencing* Tr. 537).)  There is therefore substantial evidence to support the ALJ's decision to accord Dr. Evans's opinion

Plaintiff alleged that when he fell roughly one month prior, he "tweaked his back."  Thus, it is unclear whether the ALJ was concluding that Dr. Evans's opinion was based on only one of these exams, or whether she mistakenly concluded Dr. Evans had only seen Plaintiff once.  In any event, The ALJ's analysis remains well supported notwithstanding any ambiguity.

[16] Plaintiff notes that consultative examiner, Dr. Morris, also found Plaintiff was more limited in his ability to stand and walk than the ALJ.  Plaintiff makes no further argument that the ALJ's analysis of this opinion was flawed, thus the Court will refrain from a lengthy analysis of the ALJ's treatment of this opinion.

little weight.

The ALJ also considered and weighed the opinion of Peggy Anglin, P.T. (*Id.* at 37.)
Therapist Anglin concluded, based on an April 24, 2014 Functional Capacity Evaluation
("FCE"), that Plaintiff was limited to less than sedentary work. (*Id.* (*referencing* Tr. 895).) The
ALJ stated that she gave Therapist Anglin's opinion little weight because

> it was based on one functional test that [Plaintiff] engaged in and
> it appears that he did not even put forth his best effort because
> his performance was below what he testified he is capable of
> doing. For example, [Plaintiff] testified that he is not able to
> walk more than 100 yards or 300 feet; however at the functional
> test, [Plaintiff] needed a minute break after walking
> approximately 115 feet. Exhibit 15F:111. [Plaintiff] also
> testified that he goes shopping at a store across the street and did
> not testify that he needs a motorized cart to do so. Based on his
> testimony, [Plaintiff] should have been able to complete this
> exercise without a break.

(*Id.* at 37 (*referencing* Tr. 1086–1105).)

Here, the ALJ's analysis of Therapist Anglin's opinion appears entirely reasonable and
consistent with the factors set forth in 20 C.F.R. § 916.927(c)(2), particularly the existence of
an ongoing physician-patient relationship and the opinion's consistency with the record.
Plaintiff argues that that the ALJ's analysis of Therapist Anglin's opinion was inadequate and
that the ALJ "trie[d] to expose a contradiction where there is none." (ECF No. 10 at 16.) In
essence, Plaintiff again asks the Court to re-weigh the evidence or substitute its judgment for
that of the ALJ. The Court is not at liberty to do so. *See Hancock*, 667 F.3d at 476.

The ALJ also properly considered and weighed the opinions of Drs. Dimmig, Setty,
and Gardner. (Tr. 33, 34–35.) At the outset, the Court notes that although Plaintiff argues
that these opinions were entitled to no weight or little weight, the ALJ did not give more than

little weight to either Dr. Setty's or Dr. Dimmig's opinion in its entirety. (Tr. 33, 34.) Rather, the ALJ gave great weight, some weight, and little weight to portions of each opinion, and her narrative demonstrates that she considered each proposed limitation independently and did so according to the regulations. (*Id.*) Moreover, although she gave Dr. Gardner's opinion great weight, she added additional limitations to the RFC. (*Id.* at 29, 34–35.)

As to Plaintiff's contentions, Dr. Setty opined that Plaintiff could be expected to stand, walk, and sit without limitations during an eight-hour workday with no assistive devices, could lift and carry less than ten pounds with his left hand (based on his shoulder injury), and only occasionally bend and stoop. (*Id.* at 33 (*referencing* Tr. 505).) The ALJ gave great weight to Dr. Setty's opinion regarding Plaintiff's ability to stand and walk "to the extent that they show [Plaintiff] is able to perform these activities because Dr. Setty is an impartial acceptable medical source, who personally examined [Plaintiff]." (*Id.*) However, the ALJ nevertheless limited Plaintiff to light work, which requires standing and walking only six hours in an eight-hour work day. (*Id.* at 29; 20 C.F.R. § 416.967(b).) The ALJ gave little weight to Dr. Setty's opinion of Plaintiff's ability to lift because it was "not consistent with subsequent treatment records, which reflect significant improvement of [Plaintiff's] left shoulder after his rotator cuff repairs." (Tr. 33 (*referencing* Tr. 505).) Finally, the ALJ found there were "minimal imaging findings to support a limitation of occasional stooping." (*Id.*) The ALJ thus gave good reason for giving little weight to Dr. Setty's lifting, standing, and walking limitations. *See Raper v. Astrue*, No. 1:10CV377, 2013 WL 438194, at *5 (M.D.N.C. Feb. 5, 2013) (unpublished) (finding that the ALJ properly gave little weight to an opinion that was not well-supported by evidence and reports that Plaintiff had significant improvement with medication), *report and*

*recommendation adopted*, slip op. (M.D.N.C. June 18, 2013).

With respect to Plaintiff's argument, Dr. Dimmig opined that Plaintiff could return to work, but could lift a maximum of twenty pounds, and stand and walk only two hours consecutively. (Tr. 34 (*referencing* Tr. 536).)[17] The ALJ gave significant weight to Dr. Dimmig's opinion that Plaintiff could return to work duties

> because Dr. Dimmig is [Plaintiff's] treating source and this opinion is consistent with the lack of treatment [Plaintiff] was receiving for any of his alleged impairments at that time.
>
> The undersigned gives some weight to Dr. Dimmig's opinion that [Plaintiff] could lift a maximum of twenty pounds and push or pull thirty-five pounds. The undersigned finds that this limitation would have been reasonable for a short duration after [Plaintiff's] rotator cuff tear repair surgery but Dr. Dimmig did not specify how long this limitation should be in place.
>
> In addition, the undersigned gives little weight to Dr. Dimmig's opinion that [Plaintiff] is limited to standing and walking two hours consecutively in a workday because this opinion [ ] is not well supported with either the treatment records in evidence or the minimal findings on [Plaintiff's] lumbar spine imaging reports.

(*Id.*) The ALJ therefore provided good reasons for the weight given to each portion of Dr. Dimmig's opinion. *See Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."); *Carroll v. Colvin*, No. 7:14-CV-173-RJ, 2015 WL 5737625, at *12 (E.D.N.C. Sept. 30, 2015) (finding context suggested that a limitation was temporary where it

---

[17] Dr. Dimmig opined, "[a]t this point I think it is reasonable to return to work duties. He is given a note indicating maximum lift of 20 pounds and push and pull of 35 pounds. His primary complaint is really with standing so an order is given for limited standing and walking to 2 hours consecutively. Follow-up with us is prn. For the most part he does not request any additional treatment today. He will continue with his Methadone clinic for pain relief." (Tr. 536.)

was imposed after a specific medical procedure with instructions to follow up); *Viverette v. Astrue,* No. 5:07-CV-395-FL, 2008 WL 5087419, at *5 (E.D.N.C. Nov. 24, 2008) (unpublished) (stating that an ALJ may properly infer from a claimant's failure to frequently seek medical attention that the course of treatment prescribed to him successfully controlled his conditions (citing *Wooten v. Shalala*, 1993 U.S. App. LEXIS 18071, at *10–11 (4th Cir. July 16, 1993) (unpublished))).

Finally, as to Dr. Gardner's opinion, as noted above, the ALJ gave great weight to his opinion that Plaintiff could perform the full range of light work because "Dr. Gardner is an impartial acceptable medical source, who has Social Security disability program knowledge, and this opinion is largely consistent with the record as a whole, which shows [Plaintiff] is able generally able to perform light work with a few additional limitations. (Tr. 34–35 (*referencing* Tr. 114)); *see, e.g.,* 20 C.F.R. § 416.913a(b)(1) ("State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."); *id.* at § 416.927(e) (an ALJ must consider state agency medical consultative physicians' opinions according to the same regulations used to assess other medical opinions); *SSR 96-6p*, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("[T]estimony of a non-examining physician can be relied upon when it is consistent with the record." (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971))). To the extent that the ALJ found that Dr. Gardner's opinion was not consistent with the record, she added additional limitations. (Tr. 35 ("[Plaintiff] should be

limited to frequent stooping and crouching because of his subjective complaints about low back pain.").)

That Drs. Setty, Dimmig, and Gardner rendered their opinions without the benefit of the imaging evidence does not make the ALJ's reliance on these opinions improper. Plaintiff's argument that it does therefore fails. First, the ALJ considered and described the imaging evidence at length in her step-two discussion. (*Id.* at 24, 25.) Generally, she found that it did not support extreme limitations. (*Id.* at 33–37.) Second, neither Plaintiff nor the treatment record suggests any subsequent changes in Plaintiff's condition that would render these opinions unsupported. *See Waycaster v. Berryhill*, No. 1:17CV31, 2017 WL 5564600, at *9 (M.D.N.C. Nov. 17, 2017) (unpublished), *report and recommendation adopted*, slip op. (M.D.N.C. Dec. 7, 2017). Rather, Plaintiff notes that his back problem dates back to 1998, (ECF No. 10 at 7), and he has a "long history" of knee problems dating back to the 1980's, (*id.* at 10). The ALJ was therefore entitled to rely on the opinions of Dr. Setty, Dimmig, and Gardner. The undersigned can find no error in her analysis that would warrant remand pursuant to 20 C.F.R. § 416.927(c)(2), SSR 96-2p, or other authority.

## C. The RFC is Supported By Substantial Evidence

In his third argument, Plaintiff contends that the RFC is not supported by substantial evidence. (ECF No. 10 at 18-19.) Plaintiff again argues that the "uncontradicted evidence of pain along with the objective evidence of gait disturbance and restricted range of motion in both the knee and the lumbar spine is incompatible with a finding of no impairment in standing and walking." (*Id.* at 19.) As recounted above, the ALJ considered the objective evidence of Plaintiff's back and left knee impairments at step two and properly found that

they did not have "more than a minimal effect on [Plaintiff's] ability to engage in work-related activities." (Tr. 24.) She also considered the effects of Plaintiff's non-severe back and left knee impairments when formulating the RFC. (*Id.* at 29–37.) This included a review of Plaintiff's subjective statements concerning his pain, as well as the opinion evidence submitted by Plaintiff's physicians. (*Id.*) Based on the entire record, the ALJ found Plaintiff capable of a limited range of light work. (*Id.*) At every step, the ALJ explained her reasoning and cited to evidence to support her conclusions. Plaintiff invites this Court again and again to re-weigh evidence and substitute its judgment for that of the ALJ; the undersigned declines to do so. *See Craig*, 76 F.3d at 589. The RFC is supported by substantial evidence, and this Court can find no reason to disturb it.

## V.    CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse the Decision of the Commissioner, (ECF No. 9), is **DENIED**, Defendant's Motion for Judgment on the Pleadings, (ECF No. 13), is **GRANTED,** and the final decision of the Commissioner is upheld.

This, the 13th day of March, 2018.


/s/ Loretta C. Biggs
United States District Judge